# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CASSANDRA SHEARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:19-00161-JB-N |
| | ) | |
| SYMETRA LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Motion to Dismiss and to Strike (Doc. 2), and separate supporting brief (Doc. 3), filed by the Defendant, Symetra Life Insurance Company ("Symetra"). The assigned District Judge referred the motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (4/8/2019 electronic reference). The Plaintiff, Cassandra Shears, has filed a response (Docs. 12, 13) to the motion, and Symetra has filed a reply (Doc. 14) to the response. The motion is under submission. (*See* Doc. 6). Upon consideration, the undersigned **RECOMMENDS** that Symetra's Motion to Dismiss and Motion to Strike (Doc. 2) be **GRANTED in part** and **DENIED in part** as explained herein.

## I.    Applicable Legal Standards

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court construes the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded

facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)). "[G]enerally, the existence of an affirmative defense will not support a rule 12(b)(6) motion to dismiss for failure to state a claim. A district court, however, may dismiss a complaint on a rule 12(b)(6) motion when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (quotation omitted)). *Accord Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("A district court may dismiss a complaint for failure to state a claim if an affirmative defense appears on the face of the complaint.").

Under Federal Rule of Civil Procedure 12(f) a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act on its own or on a motion made by a party either before responding to the pleading…"

## II. Background

Shears commenced this case in the Circuit Court of Mobile County, Alabama, on February 28, 2019. (*See* Doc. 1-1 at 2 – 7). On March 6, 2019, Shears filed an amended complaint, the operative pleading in this case, substituting Symetra as the named Defendant. (Doc. 1-3 at 6 - 11). Her causes of action arise from Symetra's denial of benefits under a $50,000 spouse supplemental life insurance policy taken out by her now-deceased husband and naming her as a beneficiary. Counts One and Two of the amended complaint respectively allege claims for breach of contract, and

misrepresentation and concealment.  Count Three requests relief under the Employee Retirement Income Security Act of 1974, 88 Stat. 891, as amended, 29 U.S.C. § 1132(a) *et seq.* ("ERISA"), but only "if th[e] policy is deemed to be controlled by ERISA," which Shears disputes.  On April 2, 2019, Symetra removed the case to this Court under 28 U.S.C. §1441 (*see* Doc. 1) and filed the present motion to dismiss and strike.

## III.    Analysis

### A.  ERISA Preemption

Symetra argues that Shears's state law claims in Counts One and Two of her operative complaint are due to be dismissed because they are preempted by ERISA. The undersigned agrees.

"Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid [e] for appropriate remedies, sanctions, and ready access to the Federal courts.' 29 U.S.C. § 1001(b).  The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

> ERISA is one of only a few federal statutes under which two types of preemption may arise: conflict preemption and complete preemption. Conflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims.  This type of preemption arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that "relates to" an ERISA plan.  29 U.S.C. § 1144(a)…
>
> Complete preemption, also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule. It differs from

defensive preemption because it is jurisdictional in nature rather than an affirmative defense. Complete preemption under ERISA derives from ERISA's civil enforcement provision, § 502(a), which has such extraordinary preemptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Consequently, any cause of action within the scope of the civil enforcement provisions of § 502(a) is removable to federal court.

*Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009) (quotations and some citations omitted). "Although related, complete and defensive preemption are not coextensive: 'Complete preemption is [ ] narrower than "defensive" ERISA preemption, which broadly "supersede[s] any and all State laws insofar as they ... relate to any [ERISA] plan." ERISA § 514(a), 29 U.S.C. § 1144(a) (emphasis added). Therefore, a state-law claim may be defensively preempted under § 514(a) but not completely preempted under § 502(a).' " *Id.* (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005)).[1]

---

[1] The Court need not determine whether removal was properly based on ERISA "complete preemption," because other bases for subject matter jurisdiction are readily apparent from the record. First, the operative complaint itself appears to allege a claim under ERISA in Count 3 (albeit only "if th[e] policy is deemed to be controlled by ERISA," which the Plaintiff disputes). Thus, removal was proper based on both federal question jurisdiction under 28 U.S.C. § 1331, and ERISA's separate statutory grant of jurisdiction. Additionally, Symetra's notice of removal adequately alleges an alternative basis for subject matter jurisdiction – diversity of citizenship under 28 U.S.C. § 1332(a). The notice of removal alleges that Shears "is domiciled in Alabama, and Symetra is an Iowa corporation with its home office in Washington" (Doc. 1, ¶ 11), thus demonstrating complete diversity of citizenship. *See* 28 U.S.C. § 1332(c)(1) (subject to inapplicable exceptions, for purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam) (A natural person's "[c]itizenship is equivalent to 'domicile' for purposes of diversity jurisdiction."). The notice also sufficiently alleges that the amount in controversy exceeds $75,000, exclusive of interests and costs, because Shears "seeks

"The [defensive] preemption provision of ERISA provides that it 'shall supersede any and all state laws insofar as they may now or hereafter relate to any employment plan' covered by ERISA." *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) (quoting 29 U.S.C. § 1144(a)). "A state law 'relates to' a covered employee benefit plan 'if it has a connection with or reference to such a plan.' " *Id.* (quoting *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 129 (1992)). Defensive preemption requires dismissal of state-law claims. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). As defensive preemption is an affirmative defense, it is Symetra's burden to demonstrate its applicability. *See id* ("Defensive preemption provides only an affirmative defense to certain state-law claims."); *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("[I]t is well established that the party asserting an affirmative defense usually has the burden of proving it." (quotation omitted)). Moreover, to dismiss a claim under Rule 12(b)(6), the "affirmative defense" of defensive preemption must "clearly appear[] on the face of the complaint." *Fortner*, 983 F.2d at 1028.

Shears disputes that the subject life insurance policy was issued as part of an ERISA-covered plan, pleading the ERISA claim in Count Three only as an alternative to her state law claims "if th[e] policy is deemed to be controlled by ERISA…" (Doc.

---

$50,000 in contract damages and also seeks damages for mental anguish, emotional distress, and punitive damages" (Doc. 1, ¶ 12), and an examination of the operative complaint (Doc. 1-3 at 6 − 11) supports this allegation. Shears agrees that removal is proper on the basis of diversity of citizenship (*see* Doc. 11), and the undersigned finds no reason to question removal on that basis *sua sponte*.

1-3 at 36).[2]  "For present purposes, an 'employee welfare benefit plan' governed by ERISA is any (1) plan, fund or program, (2) established or maintained (3) by an employer, (4) to provide beneficiaries (5) death benefits through an insurance policy." *Butero*, 174 F.3d at 1214 (some quotation marks omitted).  Here, it is undisputed that this case involves an insurance policy providing death benefits to beneficiaries. Moreover, the language of the policy itself (Doc. 3-1),[3] which states that the policyholder is NHS Management, LLC and that only certain "full-time Active Employees" are eligible for coverage  (Doc. 3-1 at 3 − 4), sufficiently demonstrates

---

[2] *See* Fed. R. Civ. P. 8(d)(2)-(3) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient … A party may state as many separate claims or defenses as it has, regardless of consistency.").

[3] Shears did not attach a copy of the subject life insurance policy to either of her complaints.  Symetra has submitted a "Certificate of Insurance" (Doc. 3-1) as exhibit to its present motion, which states that it summarizes the provisions of the subject policy  (*id.* at 3).  *See* 29 U.S.C. § 1022(a) ("A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title.").  For "Rule 12(b)(6) dismissals, it is generally true that the scope of the review must be limited to the four corners of the complaint.  If matters outside the pleadings are presented by the parties and considered by the district court, the Rule 12(b)(6) motion must be converted into a Rule 56 summary judgment motion. Fed. R. Civ. P. 12(d). Th[e Eleventh Circuit], however, has recognized an important qualification to this rule where certain documents and their contents are undisputed: In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  *Speaker*, 623 F.3d at 1379 (quotations and one citation omitted).  As the terms of the life insurance policy are central to Shears's claims, and she has not challenged its authenticity, the Court may consider the Certificate of Insurance in addressing the present motion.

that the policy was issued as part of a "plan" or "program" "established or maintained" "by an employer."[4]

Shears invokes 29 C.F.R. § 2510.3-1(j), "a 'safe harbor' provision that excludes some programs for group insurance from the 'employee welfare benefit plans' governed by ERISA." *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 568 (11th Cir. 1994).[5] Under that regulation, for ERISA purposes "the terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which (1) [n]o contributions are made by an employer or employee organization; (2) [p]articipation the program is completely voluntary for employees or

---

[4] *See Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) (en banc) ("At a minimum, … a 'plan, fund, or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits. []'Established or maintained' appears twice in the definition of an employee welfare benefit plan: first, an employer or employee organization or both must establish or maintain a plan, fund, or program, and, second, the plan, fund, or program must be established or maintained for specified purposes. In many instances a plan is established or maintained, or both, in writing. It is obvious that a system of providing benefits pursuant to a written instrument that satisfies ERISA ss 102 and 402, 29 U.S.C. ss 1022 and 1102, would constitute a 'plan, fund or program.' "); *Randol v. Mid-W. Nat. Life Ins. Co. of Tenn.*, 987 F.2d 1547, 1549 (11th Cir. 1993) ("The purchase of insurance at issue in this case fits within [*Donovan*'s] definition of a § 1002(1) 'plan, fund, or program.' The intended benefits are, of course, the medical care provided under the insurance policy. The class of beneficiaries is composed of the workers who chose to purchase the group health insurance. The source of financing is the employee-paid premium supplemented by the monthly $75 employer contribution. Finally, the procedures for receiving benefits are those set out in the insurance policy." (footnote omitted)).

[5] This "safe harbor" regulation was issued by "[t]he Department of Labor, which under 29 U.S.C. § 1135 is empowered to promulgate rules interpreting ERISA…" *Randol*, 987 F.2d at 1549.

members; (3) [t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; **and** (4) [t]he employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs." 29 C.F.R. § 2510.3-1(j) (emphasis added).

However, the subject group insurance program does not satisfy the "safe harbor" provision's first requirement, as the policy's terms indicate that the employer made contributions towards some of the coverage offered under the plan. (*See* Doc. 3-1 at 4, 8 – 9, 11 (providing for both "contributory coverage" – "coverage for which [the insured] was required to contribute toward the cost" – and "non-contributory coverage – "coverage for which [the insured is] not required to contribute toward the cost"), and stating that the "Employer will automatically enroll" the insured in non-contributory coverage)). Thus, even if, as Shears claims, she and her husband paid all premiums for the Supplemental Life Insurance coverage themselves, the fact that the employer contributed towards the premiums for other plan coverage defeats application of the "safe harbor" provision. *See Jefferson Pilot*, 14 F.3d at 568 ("The regulation applies only to programs where no contributions are made by an employer; yet under the Plan the defendant contributed all of the premium except for the

dependent coverage contribution. The employer must not subsidize the purchase of insurance for this safe harbor provision to apply." (citing *Randol*, 987 F.2d at 1550)).

Accordingly, the undersigned finds that the subject insurance policy is governed by ERISA, and that Shears's claims for breach of contract, misrepresentation, and concealment in Counts 1 and 2 of the operative complaint are therefore due to be dismissed with prejudice as preempted by ERISA. *See Butero*, 174 F.3d at 1215 (state-law bad faith, breach of contract, and fraud claims are all preempted under § 1144(a) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987)); *Williams v. Wright*, 927 F.2d 1540, 1549–50 (11th Cir. 1991) ("With regard to state law breach of contract claims specifically, this court and others have unanimously held that such claims are preempted by ERISA."); *Variety Children's Hosp.*, 57 F.3d at 1042 ("[W]here state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefits system.").

## B. **Failure to Exhaust**

Symetra asserts that the ERISA claim in Count 3 is due to be dismissed for failure to exhaust administrative remedies, because Shears failed to request administrative review of the December 28, 2018 initial determination denying benefits within 60 days of receiving it. Shears does not contest this, but argues that her failure to exhaust should be excused or, alternatively, that her case should be remanded to the claims administrator for further proceedings.

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts v. Am. Gen. Life & Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997). The Eleventh Circuit "appl[ies] the exhaustion requirement strictly and recognize[s] narrow exceptions only based on exceptional circumstances." *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000). "[A] district court has the sound discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place…" *Id.* at 1315 (citation and quotations omitted). However, "the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy." *Id.* Certain technical violations may, however, justify remand to the plan administrator for an out-of-time appeal. *See Counts v. Am. Gen. Life & Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) ("The consequence of an inadequate benefits termination letter is that the normal time limits for administrative appeal may not be enforced against the claimant. Thus, the usual remedy is not excusal from the exhaustion requirement, but remand to the plan administrator for an out-of-time administrative appeal." (citations omitted)).[6]

---

[6] Shears's response invokes an amendment to the ERISA regulations effective January 20, 2001, *see* 65 FR 70246-01, which provides that, "in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of [29 C.F.R. § 2560.503-1], a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any

Shears alleges in her operative complaint that she received the initial adverse determination notice "on or about January 3, 2019." (Doc. 1-3). As stated in that notice, a request for review of the adverse determination was required to be submitted "within 60 days of receipt of" the determination (Doc. 1-3 at 15), which was Monday,

available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l)(1). However, there is no Eleventh Circuit case law indicating that § 2560.503-1(l) supersedes *Counts* and *Perrino*'s holdings that technical violations of ERISA regulations that do not prejudice a claimant generally will not excuse a failure to exhaust, *see McCay v. Drummond Co.*, 509 F. App'x 944, 947 n.1 (11th Cir. 2013) (per curiam) (unpublished), and the Eleventh Circuit has continued has continued to rely on those holdings after the effective date of § 2560.503-1(l), though admittedly without noting that provision. *See O.D. v. Jones Lang Lasalle Med. PPO Plus Plan*, 772 F. App'x 800 (11th Cir. 2019) (per curiam) (unpublished); *Fla. Health Scis. Ctr., Inc. v. Total Plastics, Inc.*, 496 F. App'x 6, 12 (11th Cir. 2012) (per curiam) (unpublished); *Cromer-Tyler v. Teitel*, 294 F. App'x 504, 508 (11th Cir. 2008) (per curiam) (unpublished). Moreover, another circuit court has determined that this "deemed-exhausted provision is limited to instances in which the notice and disclosure deficiencies actually denied the participant a reasonable review procedure[,]" and thus did not overrule *Perrino* and similar cases. *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1211-13 (10th Cir. 2014). *But see Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 57–58 (2d Cir. 2016) ("[W]hen denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless. Moreover, the plan bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it." (discussing 29 C.F.R. § 2560.503–1(l)) (quotation omitted)).

March 4, 2019.[7]  As required by the ERISA regulations,[8] the letter also stated: "We will, upon specific request and free of charge, provide copies of all documents, records and/or other information relevant to your claim for benefits."  The determination also stated: "We will also, upon specific request and free of charge, provide copies of any internal rule, guideline, protocol or other similar criterion (if any) relied upon in making this determination."  (Doc. 1-3 at 15).  However, such a provision is only required to be included in adverse benefit determinations involving a "group health plan,"[9] which does not appear to include determinations for life insurance, as was involved here.[10]

---

[7] *See* 29 C.F.R. § 2560.503-1(h)(2)(i) (subject to inapplicable exceptions, in order to "provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination," a plan's claims procedure must "[p]rovide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination").

[8] *See* 29 C.F.R. § 2560.503-1(h)(2)(iii) (subject to inapplicable exceptions, in order to "provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination," a plan's claims procedure must "Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.").

[9] *See* 29 C.F.R. § 2560.503-1(j)(5)(i).

[10] "The term 'group health plan' means an employee welfare benefit plan within the meaning of section 3(1) of the Act to the extent that such plan provides 'medical care' within the meaning of section 733(a) of the Act."  29 C.F.R. § 2560.503-1(m)(6). Moreover, if the determination had involved a "group health plan," Symetra would have been required to provide Shears at least 180 days to appeal the adverse determination, rather than the 60 days that it did.  *See id.* § 2560.503-1(h)(3)(i).

Shears, then acting *pro se*, sent a letter dated January 7, 2019, to a Symetra

representative acknowledging receipt of the adverse determination and stating, in

relevant part:

> In your letter you said that I had a right to all of the records and
> documents related to your denial. You also said that I had 60 days to
> appeal your decision, but how can I appeal the decision without seeing
> the records and documents you relied on?
>
> I spoke with one of your representatives over the phone and provided
> her with more details About [sic] my husband's past medical care. The
> call was recorded.
>
> Before I can decide if I should appeal your decision, I need copies of all
> your records and documents and a copy of my recorded conversation
> with your representative when I initially applied for this coverage.
>
> Please don't start my 60 days for an appeal until after you have provided
> me the requested information.

(Doc. 1-3 at 17).

By letter dated January 10, 2019, Symetra acknowledged receipt of

Shears's letter and sent her copies of "the medical records used in the review of

the Life Insurance claim for Kenneth Eirby." (*Id.* at 19). On February 11, 2019,

current counsel for Shears sent Symetra a letter requesting additional material

and asking that the 60-day time period for Shears to appeal the adverse

determination be suspended until that material had been provided. (*Id.* at 20 –

23). That letter requested a response from Symetra by February 28, 2019.[11]

Shears filed her

---

[11] The Court can properly consider the aforementioned correspondence in ruling on
the present motion to dismiss because Shears attached copies of those letters as
exhibits to her operative complaint, and a "copy of a written instrument that is an
exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

complaint initiating this case on February 28, 2019. (*See* Doc. 1-1). There is no indication she ever requested review by March 4, 2019.

Shears claims that the adverse determination letter was defective for several reasons, none of which the undersigned finds convincing. First, she complains that "the letter only offers the Plaintiff a chance to have the denial reviewed" and that "[t]he term appeal is not mentioned until the very end of the letter." (Doc. 13 at 8). However, Shears cites no rule requiring such precision, and the ERISA statutes and regulations do not indicate there is a meaningful distinction between "appeal" and "review." *See, e.g.*, 29 U.S.C. § 1133(2) ("In accordance with regulations of the Secretary, every employee benefit plan shall afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair **review** by the appropriate named fiduciary of the decision denying the claim."); 29 C.F.R. § 2560.503-1(h)(1) ("Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to **appeal** an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a **full and fair review** of the claim and the adverse benefit determination." (emphasis added)). Moreover, Shears's January 7 *pro se* letter to Symetra adequately indicates she understood "review" to equate to an "appeal" of the adverse determination.

Similarly, Shears complains that the adverse determination letter "itself is vague as to whether or not ERISA or State law controls this matter" (Doc. 13 at 9), since it provides alternative instructions for how obtain review of the decision "**if** the

Employee Retirement Income Security Act of 1974 does not apply to [the] policyholder's plan…." (Doc. 1-3 at 41 (emphasis added)). Again, however, Shears cites no authority that requires an adverse determination letter to definitively state that the plan at issue is governed by ERISA, and as she herself acknowledges, "[t]he mere assertion that an employer intended a policy of insurance to be controlled by ERISA is not sufficient" to show that it is. (Doc. 13 at 5).[12]

Next, Shears complains that the adverse determination letter states that Symetra "will conduct only one review this determination" (Doc. 12-1 at 4), claiming this "[t]his is clearly contrary to ERISA rules and regulations" (Doc. 13 at 8). Shears does not cite which ERISA rule or regulation that this provision is "clearly contrary" to, and nothing in either the statute or regulation governing ERISA claims procedures requires more than one round of review of an adverse determination. *See*

---

[12] The facts in this case do not match those in *Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203 (11th Cir. 2003), which held that an ERISA "claim ought not to be barred by the doctrine of exhaustion if the reason the claimant failed to exhaust is that she reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit." 316 F.3d at 1207. Shears has pointed to no provision of the summary plan description that she claims was misleading. Moreover, in *Watts* the summary plan description stated both that the claimant " 'may use [the administrative appeal] procedure' if a 'claim for benefits is denied,' and also the statement that '[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court[,]' " which the plaintiff understood as stating "she had the option of continuing to pursue her claim administratively (by taking her second appeal), or filing a lawsuit, or both. As she described it, the summary plan description caused her to believe that she could do 'either, both, or neither.' " *Id.* at 1206 (alteration added). Here, the adverse determination letter's alternative appeal instructions "if" ERISA did not apply would not mislead a reasonable claimant into thinking that she was not required to exhaust her administrative remedies if ERISA did apply, and Shears does not claim otherwise.

*generally* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. If anything, the ERISA regulations appear to discourage multiple administrative reviews of adverse determinations, requiring that "claims procedures do not contain any provision, and are not administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section 502(a) of" ERISA. 29 C.F.R. § 2560.503-1(c)(2).

Finally, Shears complains that Symetra "reserve[d] the right to consider and assert other reasons for limitation or denial of [her] claim, even if [Symetra] ha[d] not previously raised such reasons." (Doc. 12-1 at 4). She asserts that "[a]llowing itself additional 'bites at the apple' while limiting Shears to only one review of the benefit determination is clearly contrary to 29 USC § 1133(2)" (Doc. 13 at 8), which provides that every ERISA plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." However, as the authority Shears cites in support makes clear, a plan administrator may deny benefits for reasons not relied on in an initial adverse determination so long as the claimant is "afford[ed] the opportunity to respond to the second, determinative reason for the termination." *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 882 (6th Cir. 2007). The initial adverse determination was careful to state that Symetra would "conduct only one review of **this determination**" (Doc. 12-1 at 4), which does not foreclose allowing review of other determinations denying benefits for different reasons than those stated in the initial determination. As Shears did not seek review of the initial

adverse determination with Symetra before filing suit (and the time to do so has expired), the Court can only speculate whether Symetra might ultimately have denied benefits for reasons not stated in the initial adverse determination without giving Shears a chance to address them.  Such speculation is insufficient to support a determination that "resort to administrative remedies would be futile," *see Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006) ("Bare allegations of futility are no substitute for the clear and positive showing of futility required before suspending the exhaustion requirement."), and because Shears never requested review of the initial adverse determination within the time allowed, she cannot show she was "denied  meaningful access to the administrative review scheme in place…" *Perrino*, 209 F.3d at 1318.

Shears also asserts that Symetra failed to produce all of the information requested in her January 7 and February 11 letters, and that this deprived her of the chance to meaningfully appeal the initial adverse determination.  She claims that "[w]ithout that information [her] appeal would have been nothing more than 'I disagree with the decision and ask that you reconsider[,]'  [a]n empty appeal that would have most likely resulted in the continued denial of benefits and then placed [Shears] in the exact same position she occupies today." (Doc. 13 at 4).  However, this assertion assumes that Shears would have been barred from presenting any new evidence or argument in support of her appeal after the 60-day period to request review had run.  Shears cites nothing to support such assumption, and nothing in the adverse determination letter suggests that Shears would have been so limited –

indeed, the ERISA regulations and the adverse determination letter both contemplate that evidence could still be received after a request for review is made. *See* 29 C.F.R. § 2560.503-1(i)(4) ("For purposes of paragraph (i) of this section, the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, *without regard to whether all the information necessary to make a benefit determination on review accompanies the filing*." (emphasis added)); (Doc. 1-3 at 15 ("The 60 day time period will start when we receive your request for review, *even if we have not received all of the information necessary to make our final determination*." (emphasis added)).

Shears has also cited nothing to support her assumption that Symetra was required to respond to her requests for documents prior to the deadline to request review. The ERISA regulations require only that a claimant "be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). They do not impose any specific time limits for responding to such requests, and it would appear that plan administrators would be in substantial compliance so long as the information was produced in time to allow a claimant to meaningfully make use of it on administrative appeal.[13]

---

[13] Under 29 U.S.C. § 1132(c)(1), a plan administrator who "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal." However, the great weight of

Nevertheless, the Court need not engage in speculation on whether Symetra would have timely produced all of Shears's requested information, because Symetra argues that it "produced all relevant documents" – i.e., the medical records produced with its January 7 letter – and that "[a]ny additional documents were not required to be produced." (Doc. 3 at 8). Symetra is correct that only information "relevant to the claimant's claim for benefits" must be produced upon request, 29 C.F.R. § 2560.503-1(h)(2)(iii), with "relevant" meaning that the information "(i) [w]as relied upon in making the benefit determination; (ii) [w]as submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; [or] (iii) [d]emonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of [29 C.F.R. § 2560.503-1] in making the benefit determination..." 29 C.F.R. § 2560.503-1(m)(8)(i)-(iii).[14]

---

circuit court authority holds "that a failure to follow claims procedures imposed on benefits plans, such as outlined in 29 C.F.R. § 2560.503–1(h)(2)(iii) does not give rise to penalties under 29 U.S.C. § 1132(c)(1). 'Plans' and 'plan administrators' are separate entities with separate definitions under ERISA. *See* 29 U.S.C. § 1002(1), (2)(A), (3), (16)(A). Penalties under 29 U.S.C. § 1132(c)(1) can only be assessed against 'plan administrators' for failing to produce documents that they are required to produce as plan administrators. 29 C.F.R. § 2560.503–1(h)(2)(iii) does not impose any requirements on plan administrators, and so cannot form the basis for a penalty under 29 U.S.C. § 1132(c)(1)." *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1162 (9th Cir. 2016) (joining the First, Second, Third, Sixth, Seventh, Eighth, and Tenth Circuit Courts of Appeal in so holding). *Accord Williamson v. Travelport, LP*, 289 F. Supp. 3d 1305, 1316-17 (N.D. Ga. 2018).

[14] "In the case of a group health plan or a plan providing disability benefits[,]" which is not the case here, information is also "relevant" if it "constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or

The adverse determination letter stated that Symetra was denying benefits and rescinding the subject policy based on purported misrepresentations made by Shears's husband in the Evidence of Insurability Application for Group Coverage (EOI) he submitted prior to approval, which were discovered by reviewing the medical records that Symetra subsequently produced to Shears. Symetra claimed that these misrepresentations were material, in that "had the applications been correctly completed, the application would have been declined." (Doc. 1-3 at 14). Shears's *pro se* January 7 letter noted that the adverse determination "said that [she] had a right to all of the records and documents related to [the] denial[,]" questioned how she could "appeal the decision without seeing the records and documents [Symetra] relied on[,]" and stated that she "need[ed] copies of all [Symetra's] records and documents…" (Doc. 1-3 at 17). Thus, the January 7 letter could reasonably be read as a request for all "relevant" information related to Shears's claim. Moreover, in her counseled February 11 letter, Shears again requested, *inter alia*, "[t]he complete plan document[, a]ll relevant claim documents and material as existed in the claim file on December 28, 2018, including a signed copy of the actual application in issue[, and t]he actual and specific underwriting guidelines [Symetra] claim[ed] were materially compromised by the alleged non-disclosure of medical information…" (Doc. 1-3 at 23). It does not appear that Symetra ever produced those documents in response to either letter, and Symetra here argues that it did not have to produce them.

---

statement was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8)(iv).

However, "ERISA requires a plan administrator to furnish the following upon written request from a plan participant: 'the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.'" *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1270 (11th Cir. 2008) (quoting 29 U.S.C. § 1024(b)(4)). Additionally, purported misrepresentations in the original EOI, and a Symetra underwriter's assurance that accurate answers would have resulted in denial of policy, were the only reason given for Symetra's decision to deny benefits. Thus, the original EOI, and the underwriting policies under which the EOI would have been reviewed, were plainly relevant because they were "relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8)(i).[15]

One purpose given by the Department of Labor for adopting § 2560.503-1(m)(8) was to provide " 'claimants with adequate access to the information necessary to determine whether to pursue further appeal.'" *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007) (quoting 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000)) (emphasis omitted). At this early stage, and drawing all reasonable inferences in favor of Shears, as the Court must on a Rule 12(b)(6) motion to dismiss, the undersigned cannot definitively say that Symetra's insistence it did not have to

---

[15] Shears attaches a copy of Symetra's "Field Underwriting Guide" (Doc. 12-2) to her response to the present motion, without explaining how she obtained them. However, it does not appear that this guide was produced in response to her February 11 letter, Symetra concedes it did not produce any underwriting guidelines in response to her written requests, and Shears does not concede that the guide was applicable to her husband's EOI.

produce the plan document, the original EOI, and the underwriting guidelines for reviewing the EOI would not have "denied meaningful access to the administrative review scheme in place" so that Shears's failure to exhaust should be excused.[16] *Perrino*, 209 F.3d at 1315. At the very least, Symetra's failure to produce those documents might constitute technical violations of ERISA sufficient to warrant remand of Shears's claims back to Symetra for further administrative proceedings. Accordingly, Symetra's motion to dismiss is due to be **DENIED** for Count Three.

### C. Jury Demand

Shears's operative complaint "requests a trial by jury for Counts One and Two set forth above and any and all disputed factual assertions related to this matter." (Doc. 1-3 at 36). Symetra requests that this jury demand be stricken. This request is due to be **DENIED as MOOT** as to Counts One and Two, since those claims are due to be dismissed as preempted. As for the ERISA claim in Count Three, "[i]t is well-settled that plaintiffs bringing ERISA claims are not entitled to jury trials under ERISA because such claims are equitable in nature." *Rolland v. Textron, Inc.*, 300 F. App'x 635, 636 (11th Cir. 2008) (per curiam) (unpublished) (citing cases). Accordingly, Shears's jury demand is due to be **STRICKEN** to the extent it requests a jury trial on any issue related to Count 3.

---

[16] At this time, the undersigned declines to address whether any of the other material specifically requested by Shears was "relevant" under § § 2560.503-1(m)(8).

## IV.    Conclusion

In accordance with the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), it is **RECOMMENDED** that (1) Symetra's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss (Doc. 2) be **GRANTED** as to Counts One and Two of the operative complaint, and otherwise **DENIED**, and (2) Symetra's Federal Rule of Civil Procedure 12(f) motion to strike (Doc. 2) be **GRANTED** to the extent Shears's jury demand requests a jury trial on any issue related to Count Three, and otherwise be **DENIED as MOOT** due to the dismissal of all other claims.

**DONE** and **ORDERED** this 13th day of September 2019.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.